IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTER DIVISION

| | | |
|---|---|---|
| CHRIS NEAL, HEATHER HARRIS, for themselves and as next of kin and Father and Mother of LEXUS NEAL, | ) ) ) ) | NO. 2:08-0068 JUDGE HAYNES |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| W.B. MELTON individually and KELLY HULL individually, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM**

Plaintiffs, Chris Neal and Heather Harris individually and as next of kin and father and mother of Lexus Neal, filed this action under 42 U.S.C. § 1983 against the Defendants: W. B. Melton individually and Kelly Hull individually. Plaintiffs' claims arise out of the Defendants' stop and search of the Plaintiffs' vehicle on April 25, 2008, when Defendant Hull was a deputy for the Overton County Sheriff's department and Melton was the Sheriff of Overton County, Tennessee. Plaintiffs' specific claims are unreasonable seizures of their persons and the Defendants' search of their vehicle as well as the Defendants' use of excessive force when the Defendant's canine entered the Plaintiffs' vehicle and jumped on their minor child who was restrained in a seat belt in the rear seat.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 13) contending, in sum, that the undisputed facts of a traffic violation justified Defendants stop of the Plaintiffs' vehicle, that the Defendants' canine's positive reaction to drugs outside Plaintiffs' vehicle justified a search of Plaintiff's vehicle, and that the time to effect that search was

reasonable. Thus, the Defendants contend that the qualified immunity doctrine bars any damages award. Plaintiffs respond that after the initial traffic stop, the Defendants lacked any specific facts to justify their continued detention of the Plaintiffs and that the search of their vehicle caused the Defendants' canine to jump onto Plaintiffs' small child.

### A. Review of the Record[1]

At an unspecified time on April 25, 2007, the Defendants received a call from Frank Dial, the Overton County Chief Deputy that a person was selling drugs out of a blue car in the vicinity of Rickman, Tennessee. (Docket Entry No. 15, Hull Affidavit at ¶ 3 and Docket Entry No. 16, Melton Affidavit at ¶ 3). Later, at approximately 8:45 p.m., the Defendants were on patrol on Old Highway 42 near Rickman when they observed a blue Cadillac that the Defendants considered to match the earlier description of the vehicle involved in drug sales. (Docket Entry No. 15, Hull Affidavit at ¶ 4) Defendants were driving behind the Plaintiffs' vehicle when Hull asked a dispatcher to run a computer check on the vehicle's license plate and that inquiry disclosed the license plate number belong to a brown Buick Riviera in Hamilton County, Tennessee. In addition, the effective date of the license plate had expired. Id. Hull believed that he had probable cause to initiate an investigatory stop of the car. Id. at ¶ 5.

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are any material factual disputes. Thus, this section does not constitute findings of fact under Fed.R.Civ.P. 56(d).

Hull turned on his blue lights to pull the vehicle over,[2] and then saw an object that "[**he**] believed to have been thrown out of the driver's side window of the Plaintiffs' car." Id. at ¶ 6 (emphasis added). Melton states that he heard something hit the windshield on the officers' vehicle as if the occupants of Plaintiffs' vehicle had thrown something out of their vehicle. (Docket Entry No. 15, Melton Affidavit at ¶ 5) (emphasis added).

Plaintiffs pulled into in a driveway and Hull walked to the driver's side of the vehicle where Plaintiff Heather Harris was the driver. Melton went to the passenger side of the vehicle where Plaintiff Chris Neal was sitting in the front seat. A four to five years old child was buckled in a child restraint seat in the rear seat of the vehicle. According to Hull, the child was screaming. (Docket Entry No. 15, Hull Affidavit at ¶ 12).

Hull asked Heather Harris for her license, registration, and proof of insurance that she produced. Hull explained why he stopped the vehicle. After a check, the vehicle's registration and Harris's driver's license were valid. During this discussion, Defendant Melton was approximately two to three feet from the passenger door of the Plaintiffs' car holding a flashlight. (Docket Entry No. 16, Melton Affidavit at ¶ 7).

Approximately eight minutes after the initial stop, Hull retrieved his canine to walk around the outside of the Plaintiffs' vehicle to detect whether drugs were present. Hull did so based upon the earlier report of a blue vehicle selling drugs and his belief that an object had been thrown out of the Plaintiffs' vehicle prior to the stop. Hull walked the canine around the outside of the Plaintiffs' vehicle to "sniff" for cocaine and the canine twice reacted positively to drugs at

---

[2]At the time Hull activated his blue lights, the video camera mounted in his patrol car began recording. The camera recorded the entire traffic stop.

the driver's side door. Opining that he had probable cause to search the vehicle, Hull asked Harris if there were drugs in the vehicle and she responded that she was unaware of any. Hull then placed his canine in his patrol vehicle.

According to the Defendants, Plaintiffs exited their vehicle for the search, the Defendants' canine left the patrol vehicle and entered the Plaintiffs' vehicle through the front passenger door. Neither Defendant instructed the dog to do so, but the canine went to the back seat and was on Plaintiffs' child who was restrained in her car seat. Hull retrieved his canine and returned him to the patrol car. According to Hull, the canine remained inside the Plaintiffs' car for approximately eleven seconds.

The video disc of the incident does not contain any audio and does not show the canine's positive reaction to the presence of drugs. Hull allowed the canine to enter the passenger's side of the vehicle before Neal, the passenger, had actually exited. The canine entered the vehicle over Neal. In the video, Hull makes no apparent effort to restrain the canine or prevent it from entering the vehicle. Although the officers were aware of the minor child's presence, the officers did not make any arrangement for the child's safety before Hull allowed and led the canine to enter Plaintiffs' vehicle.

Neal and Chris Harris became upset about the canine's entry into their vehicle and jumping on their child. Melton took Neal by the arm and escorted him a few feet away to the hood of the patrol car and asked Neal to empty his pockets on the hood of the patrol car. After Melton inspected the objects, Neal was placed on the hood and Melton conducted a pat down search. With Chris Harris beside the vehicle holding her daughter, the Defendants continued to search the vehicle, but found nothing. At the conclusion of the search, the Defendants then left.

4

According to Defendants, the traffic stop lasted twenty-three (23) minutes.

For their response, Plaintiffs admit some facts, but state that they have not taken discovery.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Accord <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

5

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

<u>Celotex</u>, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." <u>Martin v. Kelley</u>, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991) (quoting <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Emmons v.

6

McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

* * *

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof

of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This

8

marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1. Complex cases are not necessarily inappropriate for summary judgment.

    2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

    4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

    6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As to the Defendants' immunity contentions, in Anderson v. Creighton, 483 U.S. 635 (1984), involving a Fourth Amendment claim of an unreasonable search and seizure, the Supreme Court outlined the central question and held that the district court's duty is to analyze claims of qualified immunity upon an objective basis.

10

> It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. But contrary to the Creightons' assertion, this does not reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that Harlow sought to minimize. <u>The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant</u>.

Id. at 641 (emphasis added).

> In this Circuit, the <u>Anderson</u> objective test renders good faith "irrelevant." The district court found that "1) there existed reasonable grounds for Defendants to believe that their challenged action was appropriate, and (2) Defendants acted in good faith." The court noted that "[t]he test is based upon the objective reasonableness of the conduct as measured by reference to clearly established law."
>
> <u>That defendants "acted in good faith" is irrelevant</u>. The district court nonetheless applied an objective standard that is consistent with the rule enunciated in <u>Anderson v. Creighton</u>. There the court held that <u>the relevant question in determining whether an official is entitled to qualified immunity is whether a reasonable person in his position could have believed his conduct to be lawful in light of clearly established law and the information the official possessed. This is an objective inquiry, albeit a fact-specific one</u>.

Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 117 (6th Cir. 1988) (emphasis added) (citations omitted).

Qualified immunity means that the § 1983 plaintiff who seeks damages must show that the legal right asserted was clearly established. Mitchell v. Forsyth, 472 U.S. 511 (1985). "[T]o be clearly established, a question must be decided either by the highest court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988). Decisions of the District Court can be considered in deciding whether the right at issue was clearly established at the time of the alleged violation.

11

> Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, <u>to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its Court of Appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law.</u> For the decisions of other courts to provide such `clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. Here a mere handful of decisions of other circuits and district courts, which are admittedly novel, cannot form the basis for a clearly established right in this circuit.

Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177-78 (6th Cir. 1988) (emphasis added).

In the Sixth Circuit, a police officer may stop a motorist for any traffic violation, even if the officer's primary purpose is to investigate secondary crimes, United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002), but the officer must articulate specific facts that criminal activity may be afoot. See United State v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. Terry v. Ohio, 392 U.S. 1, 21, (1968). The existence of reasonable suspicion must be viewed in the "totality of the circumstances." United States v. Erwin, 155 F.3d 818, 822 (1998) (en banc). "A totality of the circumstances analysis prohibits [this Court] from discounting certain factors merely because, separately, they could potentially have "an innocent explanation." United States v. Walton, 258 Fed. Appx. 753 at *5 (quoting Untied States v. Arvizu, 534 U.S. 266. 274 (2002)).

When forming his reasonable suspicion, a law enforcement officer is "entitled to assess the circumstances and defendants in light of his experience as a police officer and his knowledge

of drug courier activity." United States v. Cortez, 449 U.S. 411, 417 (1981)). A lawful traffic stop "may become an impermissible 'seizure if it occurs over an unreasonable period of time or under unreasonable circumstances.'" United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005) (quoting Untied States v. Orsolini, 300 F.3d 724, 729-30 (6th Cir. 2002)).

In United States v. Page, 154 F.Supp.2d 1320 (M.D. Tenn. 2001), the Honorable Thomas Higgins, District Judge, summarized the relevant Fourth Amendment precedents at the time of the Defendants' conduct, including a traffic stop and the use of a canine:

> The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court of the United States has found that the stop of an automobile and the temporary detention of individuals during the stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Where the police have probable cause to believe that a traffic violation has occurred, the Supreme Court has found that the decision to stop an automobile is reasonable. See Delaware v. Prouse, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Further, as long as a traffic stop is supported by probable cause to believe that a traffic violation has occurred, the fact that the stop is in fact a pretext for other investigation is constitutionally irrelevant. Whren; United States v. Bradshaw, 102 F.3d 204, 210 (6th Cir.1996).
>
> * * *
>
> It is well settled that a narcotics detection dog's alert to the presence of contraband within a vehicle establishes probable cause justifying a search of the vehicle for contraband. See United States v. Diaz, 25 F.3d 392, 393-94 (6th Cir.1994); United States v. Knox, 839 F.2d 285, 294 n. 4 (6th Cir.1988), cert. denied, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). Although the exterior drug sniff itself is not a search for the purposes of the Fourth Amendment, see United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Fourth Amendment does prohibit the unreasonable detention of an individual or vehicle in order to conduct such a sniff.
>
> When a lawful traffic stop has been made, an officer may properly detain the driver while making radio checks and issuing citations, which are "well within the bounds of the initial stop." United States v. Wellman, 185 F.3d 651, 656 (6th

13

Cir.1999) (quoting Bradshaw at 212). Officers may lawfully question drivers about contraband and seek consent to search while these initial purposes are on-going. United States v. Palomino, 100 F.3d 446, 449-50 (6th Cir.1996). Officers may even conduct exterior canine drug sniffs during this period of time, regardless of reasonable suspicion, so long as doing so does not prolong the detention any longer than is necessary for the purposes of the traffic stop:

> There is no need to find "illegal action or evidence of illegality" [in order to conduct a drug sniff] unless there is also a need to justify continued detention of a vehicle. Although it is true that no independent "cause" or "suspicion" of illegality was testified to herein, none was needed because there was no undue or extended detention. There was, in fact, not only no undue detention, there was no detention at all other than that which was inextricably tied to the legitimate traffic stop and its aftermath.

United States v. Taylor, 955 F.Supp. 763, 768 (E.D.Mich.1997) (emphasis in original). Whether a drug sniff can be conducted without reasonable suspicion is therefore largely a question of timing.

Id., at 1325, 1326, 1327. Accord United States v. Boxley, 373 F.3d 759, 761 (6th Cir. 2004). ("[T]o admit evidence of a dog's alert to an aroma of drugs, it is not necessary to provide the dog's training and performance records, as it is similarly unnecessary to qualify a human expert in this way. Rather, testimony as to the dog's record is sufficient."). Yet, to assess Plaintiffs' claims, the searches and seizures must be evaluated in segments. Dickerson v. McCellan, 101 F.3d 1151, 1160-62 (6th Cir. 1996).

As applied here, there are four distinct segments: (1) the Defendants' initial stop of Plaintiffs' vehicle; (2) the eight minute seizure prior to the canine search; (3) the canine's entry into the Plaintiffs' vehicle and assault of Plaintiffs' child; and (4) the pat-down of the Plaintiff Neal.

As to the initial stop, given the expired license and the report of the license belonging to

14

another vehicle, the Defendants' initial stop of the Plaintiffs' was lawful. With that basis, the Defendants could question Plaintiffs and perform license and registration checks. Yet, the time of the stop appears to exceed the time to accomplish those legitimate requests. Defendants do not articulate any specific concrete facts for Plaintiffs' continued detention after the traffic stop other than the color of their vehicle. The officers' belief of items thrown from Plaintiffs' vehicle are not specific facts, but beliefs. Defendants do not present any evidence that their canine was trained to detect drugs or had other sufficient experience to be deemed reliable.

As to the canine search inside the vehicle, the Defendants' canine's positive reaction is unclear and in any event, did not reveal any drugs in the vehicle. There is not any evidence of the canine's positive reaction to drugs after the canine entered Plaintiff's vehicle. After the canine's cited reaction and entry into the vehicle, officers' searched the vehicle for almost fifteen minutes. Thus, Defendants' motion for summary judgment (Docket Entry No. 13) should be denied on Plaintiffs' claims for search of their vehicle and the canine's entry into the area of Plaintiffs' minor child, but granted as to the Defendants' initial stop and detention for the traffic stop.

An appropriate Order is filed herewith.

**ENTERED** this the ___20th___ day of November, 2009.

_____
WILLIAM J. HAYNES, JR.
United States District Judge

15